UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLYDE E. VANCE,

    Plaintiff,                                     Civil Action No. 11-15672

v.                                              HON. GEORGE CARAM STEEH
                                                  U.S. District Judge
COMMISSIONER OF SOCIAL           HON. R. STEVEN WHALEN
SECURITY,                                 U.S. Magistrate Judge

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Doc. # 17] be GRANTED, and that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on November 3, 2009, alleging disability as of March 1, 2007 (Tr. 112-114). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on April 27, 2011 before Administrative Law Judge ("ALJ") JoErin O'Leary in Mount Pleasant, Michigan (Tr. 27). Plaintiff, represented by attorney

Lewis Seward, testified (Tr. 32-47), as did Plaintiff's friend, Nikki Cain (Tr. 48-51), and Vocational Expert ("VE") Ms. Trembly (Tr. 51-56). On July 7, 2011, ALJ O'Leary found Plaintiff not disabled (Tr. 20). On November 21, 2011, the Appeals Council denied review (Tr. 1-6). Plaintiff filed for judicial review of the final decision on December 28, 2011.

## BACKGROUND FACTS

Plaintiff, born July 17, 1962, was 49 when the ALJ issued his decision (Tr. 20, 112). His application for benefits alleges disability as a result of a 1994 accident causing cognitive problems, a rotator cuff condition, heart problems, and depression (Tr. 129). He left school in eighth grade (Tr. 134) and worked previously as a roofer (Tr. 130).

### A. Plaintiff's Testimony

Plaintiff alleged constant pain due to left shoulder, lower back, and left hip problems (Tr. 32). He stated that walking for any distance caused hip and knee discomfort (Tr. 32). He reported that sitting put pressure on his spinal nerves (Tr. 32). He indicated that he had undergone two shoulder surgeries in the past two years (Tr. 33). He denied physical therapy for either back or knee problems (Tr. 34). He stated that he currently took Valium and Lortabs (Tr. 35).

Plaintiff testified that he had experienced blackouts periodically since sustaining injuries in a 1994 dune-buggy accident (Tr. 35-36). He indicated that he had undergone multiple EEGs (Tr. 36). He stated, in effect, that he had been prescribed Inderal for the condition, but had since experienced two more blackouts (Tr. 37). He stated that he did not hold a current driver's license (Tr. 38).

Plaintiff stated that he was illiterate, adding that his brothers told him that in the past, he had been able to read (Tr. 38). He acknowledged that he was able to sign his name (Tr. 39). He stated that he was capable of "very little" math, but could count change (Tr. 39). He denied handling his own finances (Tr. 38-39). Plaintiff reported that he had undergone substance abuse counseling after a DUI conviction (Tr. 40). He stated that in the year prior to the hearing, he had been incarcerated for approximately four months (Tr. 40). He indicated at a later point in the hearing that he had been previously imprisoned for seven years (Tr. 52). Plaintiff denied current psychiatric care, but noted that he had received treatment between 1995 and 1997 for suicidal tendencies and amnesia as a result the 1994 accident (Tr. 41-42). He denied inpatient treatment since but noted that he still experienced depression (Tr. 42).

Plaintiff stated that he was unable to lift his left arm above shoulder level (Tr. 43). He indicated that steroid injections to the left shoulder gave him temporary relief (Tr. 43-44). He stated that he was unable to lift even a cup of coffee with his left hand for any length of time due to gripping problems, adding that he experienced gripping problems on both sides (Tr. 44-45). He reported that he experienced severe migraine headaches three times a week which he treated with ice packs, aspirin, and sleep (Tr. 46). Plaintiff alleged memory problems, stating that he kept a book with telephone numbers with him, including his own home number and those of his brothers (Tr. 46).

**B.  The Testimony of Plaintiff's Friend**

Nikki Cain stated that she had lived with Plaintiff for the past two-and-a-half years (Tr. 48). She stated that Plaintiff was unable to read his mail (Tr. 49). She indicated that Plaintiff's inability to read prevented him from shopping by himself, adding that "[h]e can't read labels at all" (Tr. 49). She stated that she filled out his application for SSI (Tr. 49). Ms. Cain also stated that Plaintiff became confused "quite often" and experienced anxiety in crowds (Tr. 50). She reported that Plaintiff was able to perform laundry chores and light housekeeping tasks but was unable to do any yard work or snow removal (Tr. 50). She stated that he socialized on a rare basis (Tr. 51).

**C.  Medical Evidence**[1]

**1.  Treating Sources**

July, 2001 Michigan Department of Correction ("MDOC") intake records note a history of alcohol dependence and a mood disorder (Tr. 315). Plaintiff was fully oriented and was able to recall three of three objects after five minutes (Tr. 345). Plaintiff was coherent with a slowed but "intact" though process (Tr. 367). His attention span was deemed impaired as a result of a closed head injury (Tr. 367). In May, 2002 notes show that Plaintiff denied mental health issues (Tr. 320). November, 2003 psychiatric evaluation notes state that Plaintiff was haunted by the murder/suicide of his parents (Tr. 356, 401). He was able to

---

[1]Records pertaining to conditions unrelated to Plaintiff's claims of error have been reviewed in full but are mentioned for background purposes only.

recall three words after 15 minutes (Tr. 356, 401). He was assigned a GAF of 57[2] (Tr. 358, 402). March, 2004 treating records show the presence of a mood disorder (Tr. 337). In September, 2005, a mental health assessment noted the presence of a cognitive dysfunction and impaired intellectual functioning (Tr. 335). He was assigned a GAF of 61[3] (Tr. 335).

In January, 2009, Community Mental Health for Central Michigan intake records note a history of crack cocaine use and a conviction for threatening a girlfriend with a knife while intoxicated (Tr. 305, 360). Plaintiff indicated that he was currently on parole (Tr. 306). He reported that he had not used alcohol in six or seven years (Tr. 308). Plaintiff indicated that he was depressed (Tr. 308). Plaintiff reported that he attempted suicide twice after the 1994 vehicle accident, but denied current suicidal intent (Tr. 303, 334). His thought processes and concentrational abilities were deemed normal except for impairments in remote memory (Tr. 303). He was assigned a GAF of 40[4] (Tr. 309). Plaintiff's file was closed in July, 2009 after

---

[2] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* at 34 ("*DSM-IV-TR*" )(4th ed.2000).

[3] GAF scores in the range of 61-70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders–Text Revision* at 34("*DSM–IV–TR*" )(4th ed. 2000).

[4] A GAF score of 31-40 indicates "some impairment in reality testing or communication OR major impairment in several areas such as work, school, family relations, judgment, thinking or mood." *Diagnostic and Statistical Manual of Mental Disorders* at 34 ("*DSM-IV-TR*")(4th ed.2000).

he failed to show for appointments after April 28, 2009 (Tr. 297). Termination notes state that over the course of treatment, Plaintiff began a new romantic relationship and was able to overcome his social anxiety by playing the guitar in public (Tr. 297).

The same month, treating notes state that Plaintiff reported depression and social anxiety (Tr. 273). In June, 2009, Plaintiff reported a history of recurrent fainting (Tr. 264). A Valium prescription was refilled (Tr. 264). A neurologic exam was "unremarkable" (Tr. 268). August, 2009 examination records by Harris W. Weaver, M.D. note that Plaintiff was "mentally clear" and "cooperative" (Tr. 216). Plaintiff reported headaches and syncope (fainting)(Tr. 214). An October MRI of the right shoulder showed a tendon tear and degenerative changes (Tr. 576). An MRI of the left shoulder did not show evidence of a tear but mild tendinosis (Tr. 575). In November, 2009, Patrick Morse, M.D. performed a right shoulder rotator cuff repair without complications (Tr. 653).

In February, 2010, Plaintiff showed good progress following the right rotator cuff repair (Tr. 529). Dr. Morse noted impingement syndrome in the left shoulder, obtaining Plaintiff's permission to inject the joint (Tr. 529). The following month, Plaintiff reported that he was "very close to having complete resolution of his [left shoulder] symptoms," but relapsed in April, 2010 after "doing quite a bit of work overhead" (Tr. 528). April, 2010 physical therapy discharge notes state that he had good mobility and an excellent prognosis (Tr. 600). Gladwin Family Care Center treating notes from the same month state that Plaintiff reported left hip pain (Tr. 536). In June, 2010, Plaintiff reported continued left shoulder problems (Tr. 526). Plaintiff admitted that he drank on a social basis (Tr. 526).

Plaintiff sought emergency treatment after falling off an all-terrain vehicle (Tr. 561). An MRI of the brain showed no acute infarction or intracranial hemorrhage (Tr. 543). The following month, Plaintiff underwent left shoulder arthroscopy without complications (Tr. 524-525). In December, 2010, Dr. Morse noted complaints of right knee pain and lingering left shoulder pain "especially with extremes of range of motion" (Tr. 548). An MRI of the right knee showed "small joint effusion, a small Baker cyst, and a small synovial cyst (Tr. 571). The same month, psychological intake notes by "Ten Sixteen," a substance abuse program, assigned Plaintiff a GAF of 50[5] (Tr. 560). Plaintiff did not exhibit behavioral issues (Tr. 559). He reported a great relationship with his grandchildren (Tr. 558).

In January, 2011, Plaintiff denied substance abuse relapses (Tr. 557). The following month, a CT of the brain showed "old left sided infarcts" but "[n]o intracranial abnormalities" (Tr. 593, 691). Plaintiff told Dr. Morse's staff that he was canceling an appointment because "he [was] doing fine" (Tr. 599). The following month, an echocardiogram showed reduced left ventricular functioning (Tr. 685). A March, 2011 EEG was unremarkable (Tr. 652). Neurologist Zubair Shaikh, M.D. tentatively diagnosed Plaintiff with vasovagal episodes (Tr. 660). The following month, Plaintiff denied recent fainting but reported feeling dizzy (Tr. 640). Imaging studies showed mild denervation changes at L5 indicative of mild radiculopathy (Tr. 645). The same month, notes from Ten Sixteen indicate

---

[5] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR*)(4th ed.2000).

that Plaintiff had avoided alcohol use and had a support group of friends and family (Tr. 654). Plaintiff reported continued shoulder pain but demonstrated "near full range of motion" (Tr. 661).

## 2. Non-Treating Sources

In March, 2010, Jennifer A. Lombardo, Ph.D. performed a one-time examination of Plaintiff of behalf of the SSA (Tr. 466-472). Plaintiff reported depression due to financial concerns (Tr. 466). He stated that he experienced insomnia and worried about health problems (Tr. 466). He reported difficulty reading, but stated that he could shop independently and perform calculations (Tr. 467). Plaintiff denied seizures but reported amnesia following the dune buggy accident (Tr. 468). Dr. Lombardo found that Plaintiff's judgment was intact but insight was "poor" (Tr. 468). Plaintiff was fully oriented and exhibited adequate memory and concentrational skills (Tr. 469). She noted that Plaintiff visits with others but avoided public places (Tr. 470). She assigned Plaintiff a GAF of 52, but noted that despite suspected cognitive limitations, he could "understand, carry out, and remember simple, one-step instructions" (Tr. 471). In an addendum created one week after the hearing, Dr. Lombardo clarified her earlier conclusion, stating that "[i]t is believed that claimant's cognitive capacity is such that he can remember instructions that may involve multiple steps so long as the instructions are simple" (Tr. 488).

The same month, Ron Marshall, Ph.D. performed a non-examining Psychiatric Review Technique of Plaintiff's treating and examining records, noting the presence of an organic mental disorder (memory impairment) and an affective disorder (depression) (Tr.

-8-

474-475, 477).  Under the "'B' Criteria," Dr. Marshall found mild restrictions in daily living and moderate deficiencies in social functioning and concentration, persistence, or pace (Tr. 484).  Dr. Marshal also completed a Mental Residual Functional Capacity Assessment, finding moderate limitations in the ability to understand, remember, and carry out detailed instructions, maintain concentration for extended periods, perform activities within a schedule, and work in coordination with others or with the general public (Tr. 490-491).  Dr. Marshall concluded that Plaitniff could "understand, carry out [and] remember simple, two-step instructions (Tr. 492).

Also in March, 2010, Robert Nelson, M.D. completed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could lift 20 pounds occasionally and 10 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation in the lower extremities (Tr. 495).  Plaintiff's ability to push/pull in the upper extremities was deemed limited by a right rotator cuff tear and tendinosis (Tr. 495). Dr. Nelson found Plaintiff limited to frequent (as opposed to *constant*) balancing, stooping, kneeling, crouching and climbing of stairs/ramps; and occasional crawling and climbing of ladders/ropes/scaffolds and limited to occasional reaching on the right (Tr. 496-497).  Dr. Nelson concluded that Plaintiff's claims of physical limitation partially inconsistent with the medical evidence of record (Tr. 499, 507, 515).

**D.     Vocational Expert Testimony**

VE Trembly characterized Plaintiff's past relevant work as a roofer (as performed) as skilled at the heavy exertional level[6] (Tr. 53, 203). She testified that she would advise the ALJ if any of her job testimony conflicted with the Dictionary of Occupational Titles ("DOT") (Tr. 52). The ALJ then posed the following set of hypothetical restrictions, taking into account Plaintiff's age, education, and work experience:

> [A] limited range of light work, and by that, I mean that he could stand and walk for six hours as required by light work, but would be limited to lifting and carrying 10 pounds occasionally and frequently. This individual would be unable to perform . . . any reaching above shoulder level bilaterally. They could not work on ladders, ropes, or scaffolds. They could not kneel or crawl. They could not work – they, well, they would have to avoid exposure to unprotected heights or dangerous moving machinery. They would be limited to simple, routine tasks, with verbal instructions, and no reading required. . . . [W]ould such an individual be able to perform any of the past work you identified? (Tr. 53).

Based on the above restrictions, VE found that the individual would be unable to perform any past work, but if the exertional level of "light" were replaced with "sedentary," the individual could perform the work of an assembler (2,000 positions in the State of Michigan), and inspector (1,100) (Tr. 54). The VE initially found that the hypothetical limitations allowed work as a packer, but later retracted her testimony, based on the need to

---

[6] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

read (Tr. 54). The VE stated that the additional limitation of a preclusion on "work with the general public" would not change the job findings (Tr. 54). The VE found that if the individual were off task 25 percent of the workday due to concentrational problems or was unable to stand, sit, and walk for a total of eight hours each day, all work would be precluded (Tr. 54).

### E. The ALJ's Decision

Citing the medical transcript, ALJ O'Leary found that Plaintiff experienced the severe impairments of "chronic bilateral shoulder pain status-post bilateral surgeries; degenerative disc disease of the lumbar spine; chronic left hip pain; right knee iliotibial band syndrome; vasovagal episodes; headaches; major depressive disorder; cognitive disorder; and a history of substance abuse" but that none of the impairments met or equaled a listed impairment under 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 13). She found that Plaintiff experienced mild restriction in activities of daily living and moderate difficulty in social functioning and concentration, persistence or pace (Tr. 14). She determined that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> [L]imited to lifting and/or carrying up to 10 pounds on an occasional or frequent basis. He cannot reach above shoulder level bilaterally. He cannot kneel, crawl, or climb ladders, ropes, or scaffolds. He must avoid all exposure to unprotected heights or dangerous moving machinery. He is unable to work with the general public. He is limited to simple and routine tasks and he must be given verbal instructions as he is restricted from work that requires reading (Tr. 15).

Citing the VE's findings, the ALJ found that Plaintiff could not perform any past relevant work but could work as an assembler or inspector (Tr. 19-20).

The ALJ discounted Plaintiff's allegations of disability, noting "significant inconsistencies in the record as a whole" (Tr. 17). She cited April, 2010 treating notes showing that Plaintiff was performing "quite a bit of overhead work" (Tr. 17). She noted that Plaintiff denied any alcohol use when questioned in March, 2010, but admitted to occasional use three months later (Tr. 17). She also cited substance abuse treatment records showing alcohol and marijuana use between December, 2010 and April, 2011 (Tr. 17).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health*

*& Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## **ANALYSIS**

### **The Hypothetical Question/RFC**

Plaintiff argues that the hypothetical limitations posed to the VE, identical to the RFC found in the administrative opinion, did not account for his moderate limitations in concentration, persistence, or pace ("CPP"). *Plaintiff's Brief* at 3-6, *Docket #12*. Citing *Ealy v. Commissioner,* 594 F.3d 504, 516 (6th Cir. 2010), he contends that hypothetical restrictions of "simple and routine" were insufficient to address his concentrational problems. *Plaintiff's Brief* at 4 (citing Tr. 53).

Plaintiff is correct that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).

Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.). The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. However, an ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language in the hypothetical. *Smith*

*v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *Webb v. CSS,* 368 F.3d 629, 633 (6th Cir. 2004).

*Ealy, supra,* is superficially similar to this case.  In *Ealy* the Court found that the hypothetical limitations of "simple repetitive tasks" were insufficient to account for the claimant's moderate deficiencies in CPP.   Similarly here, the hypothetical limitations consisted of "simple and routine" (Tr. 53).  However, *Ealy*  does not hold that the terms "simple, repetitive," "routine" or similar modifiers are intrinsically inadequate to address moderate CPP deficiencies.  Rather, the *Ealy* Court determined that the hypothetical limitations of "simple, repetitive," drawn from a non-examining medical source conclusion, impermissibly truncated the same source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516.  The position that "simple and repetitive" or synonymous terms are *always* insufficient to address moderate CPP deficiencies (even where the record does not support more stringent limitations) reflects an erroneous reading of *Ealy.*  To the contrary, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations.  *Smith, supra*; *see also Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich.  2008)).

Here, in contrast to *Ealy,* the  hypothetical limitations of "simple and routine" are drawn from conclusions by Dr. Marshall,  who concluded his Mental Residual Functional

-15-

Capacity Assessment by stating that Plaintiff retained the ability "to do rote tasks" and follow "simple instructions" (Tr. 492). The hypothetical restrictions in this case, unlike *Ealy,* do not amount to an incomplete or distorted account of the non-examining conclusion. I note that while Dr. Marshall stated that Plaintiff "may need some repetition of instruction until tasks become[] routine," that did not alter his conclusion that Plaintiff was capable of following simple instructions (Tr. 492). Further, the record does not support Plaintiff's argument that the hypothetical question ought to have including specific pacing limitations. *Plaintiff's Brief* at 4. The limited psychological treating records do not suggest that Plaintiff experienced "pacing" problems, but rather, support the conclusion that Plaintiff could perform quota-based work (Tr. 303).

On a related note, Plaintiff asserts that the ALJ ought to have included all of Dr. Marshall's findings from Section I of the mental assessment in the hypothetical question, such as the ability to perform "within a schedule," and to work in coordination with others. *Plaintiff's Brief* at 5 (citing Tr. 490-491). However, as noted by Defendant, "Section I of the [Assessment] is "merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment.'" *Defendant's Brief* at 9, *Docket #17* (citing Program Operation Manual System ("POMS") DI 24510.060(B)(2)(a)). Instead, the ALJ properly cited Section III of the Dr. Marshall's assessment, which stated Plaintiff's residual functional capacity after all of the limitations in Section I. had been taken into account. *Id.* Moreover, the argument that the

-16-

hypothetical question must contain a recitation of the claimant's discrete limitations has also been rejected by the Sixth Circuit. *See Webb, Smith, supra.*

Substantively speaking, the ALJ's choice of hypothetical limitations is well supported by the record. She also acknowledged Plaintiff's cognitive difficulties by restricting him to jobs that allowed for exclusively verbal instructions and no reading (Tr. 53). None of the jobs cited required Plaintiff to interact with the public (Tr. 54). Substantial evidence also supports the omission of more stringent limitations from the hypothetical question. Plaintiff cites an examiner's records from his initial interview with the SSA which state that he experienced problems with understanding and concentration. *Plaintiff's Brief* at 5 (citing Tr. 126). However, in contrast, January, 2009 treating notes state that Plaintiff did not exhibit concentrational limitations except for impairments in remote memory (Tr. 303). August, 2009 treating notes described Plaintiff as "mentally clear" (Tr. 216). Likewise, Dr. Lombardo observed that Plaintiff's thought processes were "well organized and pertinent" (Tr. 469). Plaintiff's self-described daily activities and statements to treating sources also support the ALJ's choice of hypothetical limitations. Plaintiff admitted that he was capable of doing his own laundry (Tr. 150), socializing with friends and family (Tr. 160, 654), watching movies (Tr. 160) initiating and sustaining a romantic relationship (Tr. 297), and playing the guitar in public (Tr. 297).

In closing I note that while Plaintiff experiences some degree of limitation as a result cognitive and psychological limitation, the conclusion that he is capable of a significant range of work is generously supported by the record. The ALJ's discussion of the medical

evidence of record was well developed. Based on a review of this record, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Doc. #17] be GRANTED and that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Issue first raised in objections to a magistrate judge's report and recommendation are deemed waived. *U.S. v. Waters,* 158 F.3d 933, 936 (6th Cir. 1998). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length

unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                              **s/ R. Steven Whalen**
                                              R. STEVEN WHALEN
                                              UNITED STATES MAGISTRATE JUDGE

Dated: February 21, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 21, 2013.

                                              s/Johnetta M. Curry-Williams
                                              Case Manager